# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| Jackson Pavelka and Kaylee Pavelka, individual and on behalf of a class | § § § | |
| Plaintiffs, | § § | CA No. 3:22-cv-74 |
| v. | § § § | Class Action Complaint |
| Pelican Investment Holdings Group, LLC d/b/a AAP, Affordable Auto Protections, LLC, and Gustav Renny | § § § § | Jury Demanded |
| Defendants. | § § | |

## PLAINTIFFS JACKSON PAVELKA'S AND KAYLEE PAVELKA'S CLASS ACTION COMPLAINT

1. **Background**

1.1. Jackson Pavelka ("J. Pavelka") and Kaylee Pavelka ("K. Pavelka")(collectively, "**Plaintiffs**") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). They are also suing under Section 305-053(c) of the Texas Business &

Commerce Code and Section §302.101 of the Texas Business & Commerce Code.

1.2. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

1.3. The cellular residential telephone number 817.805.4742 (the "Telephone Number") is/was listed on the national Do Not Call Registry, a list explicitly designed to protect the public from these kind of intrusive telemarketing calls. On December 27, 2021, Plaintiffs received a pre-recorded call on the Telephone number.  The calling number was 817.801.1453. Defendants or their telemarketing representatives or lead generators made the call to the Telephone Number.

1.4. In the call Defendants made a marketing solicitations, i.e., a call for the purpose of the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

1.5. Because Plaintiffs had not given their consent to receive this call from Defendants, the call violated the TCPA and the Do Not Call Registry laws and regulations.

1.6. This is the exact scenario Congress attempted to prevent in enacting the TCPA. Plaintiffs now seek this Court's intervention and help in attempting to prohibit this unlawful conduct.

1.7. Because the call was transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants and Texas classes of individuals who were subject to Defendants' illegal telemarketing practices.

1.8. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right

of action afforded by the TCPA and the Texas statutes and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## 2. Parties

2.1. J. Pavelka is a resident of this District.  He is the owner of the Telephone Number.

2.2. K. Pavelka is a resident of this District.  She is the user of the Telephone Number.

2.3. Defendant Pelican Investment Holdings Group, LLC d/b/a AAP ("AAP") is a Delaware entity registered to do business in Florida as AAP and is an entity that solicits business in the State of Texas. AAP makes telephone solicitations in the form of telephone calls to Texas residents, including Plaintiffs. AAP makes these calls using a telephone number with a Texas area code.

2.4. Defendant Affordable Auto Protections, LLC ("Affordable Auto") is an entity that solicits customers for and sells vehicle service contracts in the State of Texas and to Texas Residents.

2.5. Gustav Renny ("Renny") participated in the illegal telemarketing by personally approving the calling campaign and directing the activities of the individuals that made the calls.

2.6. At all times relevant hereto, Renny, acting in concert with the other Defendants, has formulated, directed, controlled, had the authority to control, or otherwise participated in the acts and practices set forth in this Complaint.

2.7. Renny, along with the other Defendants, controlled and used the autodialing equipment at issue and "developed or authorized the policies and procedures that led to violations of the TCPA." *McGee v. Halsted Fin. Servs., LLC*, 2014 U.S. Dist. LEXIS 36159 at *2 (D. Del. Mar. 19, 2014) (citing *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 378 (4th Cir. 2013)).

2.8. AAP, Affordable Auto and Renny are collectively "Defendants."

## 3.   Venue

3.1. The Court has federal question subject matter jurisdiction over these TCPA claims.   *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

3.2. Venue is proper because the Plaintiffs are residents of this District and Defendants have sufficient contacts in this State and District to subject it to personal jurisdiction.

## 4.   Article III Standing

4.1. Plaintiffs have Article III standing for their claim under the TCPA. *Spokeo, Inc., v. Thomas Robins*, 136 S. Ct. 1540 (2016). *See also*, *Jamison v. Esurance Ins. Servs., Inc.,* No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016).

4.2. Plaintiffs were harmed by Defendants' actions of calling their residential phone while the Telephone Number was on the Do Not Call Registry, without consent and with an ATDS and/or a pre-recorded voice in the following manners:

4.2.1.   Plaintiff's privacy was invaded by Defendants;

4.2.2.   Plaintiffs were harassed and abused by Defendants' telephone call;

4.2.3.   Defendants' call was a nuisance to Plaintiffs;

4.2.4.   Plaintiffs' phone was unavailable for other use while processing the illegal call from Defendants;

4.2.5.   Defendants illegally seized Plaintiffs' telephone line while they made illegal the illegal call to Plaintiffs' cellular telephone;

4.2.6.   Plaintiffs' telephone line was occupied by the unauthorized call from Defendants;

4.2.7.   Defendants' seizure of Plaintiffs' telephone line was intrusive; and

4.2.8.   Plaintiffs were inconvenienced by Defendants' call, by among other things, having to listen to the pre-recorded message

**5.  TCPA Background and pre-recorded message calls to cellular telephones.**

5.1. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

5.2. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

5.3. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

5.4. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and

invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

5.5. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## 6. The TCPA Requires Entities to Have Sufficient Policies in Place to Prevent Unwanted Calls Before Making Telemarketing Calls.

6.1. The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

6.2. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

6.3. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

6.4. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

6.5. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

6.6. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

6.7. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

6.8. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

## 7. The National Do Not Call Registry

7.1. The national Do Not Call Registry (the "**Registry**") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

7.2. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

7.3. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

8. **Vicarious Liability**

8.1. Under federal common-law principles of agency, there is vicarious liability for TCPA violations. *See In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6582 (2013).

8.2. An agency relationship can be based on express authority, apparent authority, or ratification. Express authority exists when a principal authorizes an agent to perform specific tasks for the principal's benefit and is subject to its control. Alternatively, apparent authority can create agency, such as when a third-party reasonably believes an actor has authority to act as an agent and the belief is traceable to a manifestation of the principal. Ratification may give rise to an agency relationship, such as when a principal ratifies the agent's acts by knowingly accepting their benefits.

8.3. Although allegedly separate entities, Affordable Auto, AAP and Renny are in fact all one and the same.

8.4. Affordable Auto and AAP are each controlled by Renny. AAP is controlled by Affordable Auto.

8.5. Affordable Auto and Renny directed AAP to make the telephone solicitation call to Plaintiffs and calls to the Class Members. Affordable and Renny are liable for the call under the principle of express authority.

8.6. Affordable Auto and Renny benefited from the vehicle service contracts issued by AAP to K. Pavelka. Affordable Auto and Renny accepted the future benefits of the profits from the vehicle service contracts and thus ratified the call made to Plaintiffs.

8.7. Affordable Auto and Renny benefited from the vehicle service contracts issued by AAP to the Class Members. Affordable Auto and Renny accepted the benefits of the profits from the vehicle service contracts and thus ratified the calls made to the Class Members.

8.8. AAP is the agent of both Affordable Auto and of Renny.

8.9. AAP's website www.useaap.com is registered to GR Investment Group, LLC. Renny is the registered agent and Manager of GR Investment Group, LLC. The principal address of GR Investment Group, LLC is 1300 N Congress Avenue, West Palm Beach, FL 33409.

8.10.    AAP is the fictitious name of Pelican Investment Holdings Group, LLC.    Renny signed Pelican Investment Holdings Group, LLC's application for registration of the AAP fictitious name with the State of Florida.

8.11.    The principal address of Pelican Investment Holdings Group, LLC is 1300 N Congress Avenue, West Palm Beach, FL 33409.

8.12.    The sole member and the Manager of Pelican Investment Holdings Group, LLC is Falcon Endeavors Inc.

8.13.     The principal address of Falcon Endeavors Inc. is 1300 N Congress Avenue, West Palm Beach, FL 33409. Renny is the Chief Executive Officer of Falcon Endeavors Inc.

8.14.    Affordable Auto's principal address is 1300 N Congress Avenue, West Palm Beach, FL 33409. Renny is the registered agent and Manager of Affordable Auto.

## 9.  AAP's Calling Scheme and Vehicle Service Contracts/Providers

9.1.  AAP as the fictitious name of Pelican Investment Holdings Group, LLC would contract with vehicle service providers to actually sell the vehicle service contracts and enroll the called party.  Via, this arrangement AAP would make the telephone solicitation to the potential customer, such as Plaintiffs, and then transfer the call to the vehicle service providers to finish the transaction.

9.2. AAP would solicit customers. If individuals were potentially interested in a vehicle service contract, AAP would forward phone calls with prospective customers to a vehicle service provider sales representative. If the resulting sales call resulted in a vehicle service contract sale, AAP would pay the vehicle service provider a percentage of the vehicle service contract sales price.

9.3. AAP utilized a mass "press-1" robo-dialing campaign (often times contacting numbers on the "Do Not Call" directory) in violation of various federal and state laws to route the live calls to the vehicle service providers.

9.4. Some of the vehicle service providers learned of AAP's illegal mass dialing campaign when the vehicle service providers began receiving complaints. The vehicle service providers were forced to defend and settle multiple complaints arising out of calls made by AAP and sent to the vehicle service providers.

9.5. The scheme is set forth in Case Number 9:21-cv-81993-RS in the Southern District of Florida. Exhibit B attached hereto.

9.6. The vehicle service providers sued Pelican Investment Holdings Group, LLC for fraud for failure to disclose the illegal "press-1" robo-dialing campaign.

**10. Factual Allegations regarding the Telemarketing Solicitation Call**

10.1.     J. Pavelka is the owner of the Telephone Number.  The Telephone Number is a cellular number. K. Pavelka is the user of the Telephone Number.  She uses the Telephone Number for residential purposes. It is the only telephone number she regularly uses.

10.2.     The call at issue was not placed to the Telephone Number for "emergency purposes."

10.3.     Defendants or their telemarketing representatives or lead generators called the Telephone Number on December 27, 2021, and made marketing solicitations, i.e., a call for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

10.4.     Specifically, Defendants were attempting to sell a vehicle service contract to Plaintiffs. Facts concerning the call are as follows:

10.4.1. The call was a pre-recorded voice stating that the caller had contacted the recipient of the call through the mail and this was a final notice;

10.4.2. The pre-recorded message did not provide "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4);

10.4.3. K. Pavelka pressed "1" to be connect with an agent;

10.4.4. K. Pavelka was connected with Steve Morris;

10.4.5. Steve Morris then connected K. Pavelka with Latoya Hightower, a vehicle service contract warranty specialist. Ms. Hightower sold K. Pavelka a vehicle service contract. The transaction was completed on the call. Ms. Hightower gave K. Pavelka a contact number of 888-678-0697, a number appearing on AAP's website; and

10.4.6. The vehicle service contract was issued by Affordable Auto.

10.5.   The call was placed without the Plaintiffs' prior express written consent and was a willful violation of the respective laws. Defendants have been sued before for TCPA violations.

10.6.   Additionally, J. Pavelka has previously informed Renny not to call any of the telephone numbers he owned. See Exhibit A. The Telephone Number was a number that was listed as a no-contact number.

10.7.   Neither Plaintiff is a customer of Defendants and neither has provided Defendants with his/her written consent to be called on the Telephone Number.

10.8.   The call was to a telephone number that Plaintiffs had listed on the National Do Not Call Registry for more than 31 days prior to the call.

10.9.    The call was made by Defendants or Defendants' authorized agents and partners in Defendants' solicitation scheme. Thus, the call was made on behalf of Defendants.

10.10.   None of the Defendants registered pursuant to § 302.101 of the Texas Business & Commercial Code to provide telephone solicitations. The   https://direct.sos.state.tx.us/telephone/telephonesearch.asp   site ("Texas Registration Database") does not contain any of the Defendants' registrations.

10.11.   The telephone number from which Plaintiff was called, 817.801.1453, does not appear in the Texas Registration Database.

10.12.   None of the Defendants qualify for an exemption under § 302.053.

10.13.   The call was made to K. Pavelka who was located in Texas and who qualifies as a "purchaser" under § 302.001 of the Texas Business & Commercial Code.

10.14.   Plaintiffs and all members of the classes defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance.

## 11. Class Action Allegations

11.1. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein

11.2.    Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23:

11.2.1. **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiffs.

11.2.2. **Defendants Do Not Call Class**: All persons in the United States whose, (1) telephone numbers have previously been provided to Defendants in connection with a request to no longer be called (2) but received a telephone solicitations from or on behalf of Defendants in a twelve-month period (3) including at least one telephone solicitation from or on behalf of Defendants more than 30 days after requesting to no longer be called (4) from four years prior to the filing of the Complaint.

11.2.3. **The Texas 305 Do Not Call Class:** All persons in the state of Texas from four years prior to the filing of this action through the present who (A) (1) Defendants (or an agent acting on behalf of Defendants) called where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (2) for the purpose of selling Defendants' products and services; and (3) for whom Defendants claims it obtained prior express written consent in the same manner as Defendants claims it supposedly obtained prior express written consent to call the Plaintiffs; or (B) received one or more calls after registering the landline, wireless, cell or mobile telephone

number on which they received the call(s) with Defendants'
internal Do-Not-Call list.

11.2.4. **The Texas 305 Pre-recorded Message Class:** All persons
in the state of Texas who (1) to whose cellular telephone
number or other number for which they are charged for the call
(2) Defendants (or an agent acting on behalf of Defendants)
placed a telemarketing call (3) within the four years prior to the
filing of the Complaint (4) using an identical or substantially
similar pre-recorded message used to place the telephone call
to Plaintiffs.

11.2.5. **The Texas Registration Class:** All persons in the state of
Texas from four years prior to the filing of this action through
the present (or an agent acting on behalf of Defendant) to
whom Defendant (or an agent acting on behalf of Defendant)
made a telephone solicitation.

11.3. Excluded from the Classes are counsel, the Defendants, and any entities in
which the Defendants have a controlling interest, the Defendants' agents
and employees, any judge to whom this action is assigned, and any member
of such judge's staff and immediate family.

11.4.      The Plaintiff is a member of and will fairly and adequately represent
and protect the interests of the Classes as he has no interests that conflict
with any of the Class members.

11.5. This Class Action Complaint seeks injunctive relief and money damages.

11.6.      The Classes as defined above are identifiable through dialer
records, other phone records, and phone number databases.

11.7. Plaintiff does not know the exact number of members in the proposed classes, but reasonably believes based on the scale of Defendants' business, that the classes are so numerous that individual joinder would be impracticable. On information and belief, the potential class members number at least in the hundreds or thousands.

11.8.     Plaintiff and all members of the proposed classes have been harmed by the acts of Defendants in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights.

11.9.     The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

11.10.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

11.11.     There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

11.11.1. whether multiple telemarketing calls were made promoting Defendants' goods or services to members of the Classes;

11.11.2. whether the telemarketing calls at issue were made to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

11.11.3. whether Defendants made multiple calls to individuals more than 30 days after they had been provided with an instruction to no longer contact such individuals;

11.11.4. whether Defendant's conduct constitutes a violation of the TCPA; and

11.11.5. whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

11.12. Plaintiffs' claims are typical of the claims of class members.

11.13. Plaintiffs are an adequate representative of the class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

11.14. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

11.15.    The actions of Defendants are generally applicable to the class as a whole and to Plaintiff.

11.16.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

11.17.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

11.18.    Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## 12. Count One -Violation of the Telephone Consumer Protection Act, U.S.C. 227(b)) on behalf of the Robocall Class

12.1.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

12.2.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C.

§ 227, by making calls, except for emergency purposes, to the cellular telephone number of Plaintiff and members of the Class delivering pre-recorded messages.

12.3.    As a result of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

12.4.    If the Defendants' conduct is found to be knowing or willful, the Plaintiffs and members of the Class are entitled to an award of up to treble damages.

12.5.    Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

**13. Court Two - Violation of Tex. Bus. & Com. Code, Chapter 305 ("TBCC")**

13.1.Plaintiffs incorporate by reference all of the above paragraphs as though fully stated herein.

13.2.     Plaintiffs are a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

13.3.     Defendants are a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

13.4.     Pursuant to Section 305-053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both an injunction and damages.

13.5.     As set forth above Defendants violated 47 U.S.C. § 227, or a regulation adopted under that provision.

13.6.     Plaintiff is entitled to a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305.

13.7.     Pursuant to Section 305-053(b) of the Texas Business & Commerce Code, Plaintiffs are entitled to the greater of $500.00 for each violation or Plaintiffs' actual damages for each call negligently made by Defendants.

13.8.    Pursuant to Section 305-053(c) of the Texas Business & Commerce Code, Plaintiffs are entitled to not more than the greater of $1,500.00 for each violation or three times Plaintiffs' actual damages for each violation by Defendants that the Court finds was made knowingly or intentionally.

## 14. Count Three - Violation of § 302.101 of the Texas Business & Commerce Code.

14.1.    Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

14.2.    §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

14.3.    Defendants violated § 302.101 of the Texas Business & Commercial Code when it or its representative engaged in telephone solicitation of Plaintiffs and the Texas Registration Class Members without obtaining a registration certificate from the Office of the Secretary of State.

14.4.    §302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, §302.302(d) provides that the

party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees. Plaintiffs seeks all these damages.

**15. Prayer for Relief**

15.1. Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

15.1.1.  Injunctive relief prohibiting Defendants from making telephone calls advertising their goods or services, except for emergency purposes, utilizing pre-recorded messages or to any number on the National Do Not Call Registry in the future;

15.1.2.  As a result of Defendant's negligent, willful and/or knowing violations of 47 U.S.C. 227(b), Plaintiff seeks for himself and each member of the Classes up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

15.1.3.  As a result of Defendant's negligent, willful and/or knowing violations of 47 U.S.C. 227, damages pursuant to Section 305-053(a) of the Texas Business & Commerce Code.

15.1.4. For Plaintiffs and each of the class members a civil penalty of $5,000 for each violation of §302.302(a) of the Texas Business &

Commerce Code and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees;

15.1.5.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiffs are a proper representative of the Classes, and appointing their lawyers and law firms representing Plaintiffs as counsel for the Classes;

15.1.6.  Injunctive relief (as provided under §302.302(d) of the Texas Business & Commerce Code);

15.1.7.  Such other relief as the Court deems just and proper.

**16. Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted:

By:     */s/ Chris R. Miltenberger*
Chris R. Miltenberger
Texas State Bar Number 14171200
Designated as Lead Attorney

**The Law Office of Chris R. Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Attorney for Plaintiffs