# UNITED STATES DISTRICT COURT
## Northern District of Texas
## Dallas Division

| | | |
|---|---|---|
| Jackson Pavelka, Kaylee Pavelka, Thomas Doughty, Jan Morton and David Morton, individual and on behalf of a class | § § § § § | CA No. 3:22-cv-74-B |
| Plaintiffs, | § § § | |
| v. | § § | Class Action Complaint |
| Pelican Investment Holdings Group, LLC d/b/a AAP, Affordable Auto Protection, LLC, and Gustav Renny | § § § § | Jury Demanded |
| Defendants. | § § | |

## Plaintiffs' Amended Class Action Complaint

1. **Background**

  1.1. Jackson Pavelka ("J. Pavelka"), Kaylee Pavelka ("K. Pavelka"), Thomas Doughty ("Doughty"), Jan Morton ("J. Morton") and David Morton ("D. Morton")(collectively, "**Plaintiffs**") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). They are also suing under Section 305-053(c) of the Texas Business & Commerce Code and Section §302.101 of the Texas Business &

Commerce Code.

1.2. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

1.3. The cellular residential telephone number(s) referenced in this Amended Complaint are/were listed on the national Do Not Call Registry, a list explicitly designed to protect the public from these kind of intrusive telemarketing calls. On the dates referenced below Plaintiffs received pre-recorded calls.   The calling numbers are referenced below. Pelican Investment Holdings Group, LLC d/b/a AAP ("AAP") made the calls.

1.4. In the calls, AAP made a̶ marketing solicitations, i.e., a call for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

1.5. Because Plaintiffs had not given their consent to receive these calls from AAP, the calls violated the TCPA and the Do Not Call Registry laws and regulations.

1.6. This is the exact scenario Congress attempted to prevent in enacting the TCPA. Plaintiffs now seek this Court's intervention and help in attempting to prohibit this unlawful conduct.

1.7. Because the calls were transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants and Texas classes of individuals who were subject to Defendants' illegal telemarketing practices.

1.8. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the Texas statutes and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## 2. Parties

2.1. J. Pavelka is a resident of this District.  He is the owner of the cellular residential telephone number 817-805-4742. The number was listed on the National Do Not Call Registry on May 23, 2019.

2.2. K. Pavelka is a resident of this District.  She is the user of the cellular residential telephone number 817-805-4742.

2.3. Doughty is a resident of Jarrell, Texas. He is the owner and user of the cellular residential telephone numbers 610-324-0995, 610-428-0033, 512-522-1472, and 512-934-4946. The numbers were listed on the National Do Not Call Registry on 9-11-2007, 6-28-2006, 2-6-2011 and 10-06-2011 respectively.

2.4. J. Morton is a resident of Wylie, Texas. She is the owner and user of the cellular residential telephone number 912-375-4013. The number was listed on the National Do Not Call Registry on 11-17-2004.

2.5. D. Morton is a resident of Wylie, Texas. He is the owner and user of the cellular residential telephone number 972-375-8011. The number was listed on the National Do Not Call Registry on 11-17-2004.

2.6. Defendant AAP is a Delaware entity registered to do business in Florida as AAP and is an entity that solicits business in the State of Texas. AAP makes telephone solicitations in the form of telephone calls to Texas residents, including Plaintiffs. AAP makes these calls using telephone

numbers with a Texas area code and other area codes.

2.7. Defendant Affordable Auto Protection, LLC ("Affordable Auto") is an entity that solicits customers for and sells vehicle service contracts in the State of Texas and to Texas Residents.

2.8. Gustav Renny ("Renny") participated in the illegal telemarketing by personally approving the calling campaigns that resulted in the calls to Plaintiffs and directing the activities of the individuals that made the calls.

2.9. At all times relevant hereto, Renny, acting in concert with the other Defendants, has formulated, directed, controlled, had the authority to control, or otherwise participated in the acts and practices set forth in this Complaint that resulted in the calls to Plaintiffs.

2.10. Renny, along with the other Defendants, controlled and used the autodialing equipment at issue and "developed or authorized the policies and procedures that led to violations of the TCPA." *McGee v. Halsted Fin. Servs., LLC*, 2014 U.S. Dist. LEXIS 36159 at *2 (D. Del. Mar. 19, 2014) (citing *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 378 (4th Cir. 2013)).

2.11. AAP, Affordable Auto and Renny are collectively "Defendants."

3. **Venue**

3.1. The Court has federal question subject matter jurisdiction over these

TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

3.2. Venue is proper because the J. Pavelka and K. Pavelka are residents of this District and Defendants have sufficient contacts in this State and District to subject them to personal jurisdiction.

## 4. Article III Standing

4.1. Plaintiffs have Article III standing for their claim under the TCPA. *Spokeo, Inc., v. Thomas Robins*, 136 S. Ct. 1540 (2016). *See also*, *Jamison v. Esurance Ins. Servs., Inc.,* No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016).

4.2. Plaintiffs were harmed by Defendants' actions of calling their residential phone while the telephone numbers were on the Do Not Call Registry, without consent and with a pre-recorded voice in the following manners:

4.2.1.   Plaintiffs' privacy was invaded by Defendants;

4.2.2.   Plaintiffs were harassed and abused by Defendants' telephone calls;

4.2.3.   Defendants' calls were a nuisance to Plaintiffs;

4.2.4.   Plaintiffs' phones were unavailable for other use while processing the illegal calls from Defendants;

4.2.5.   Defendants illegally seized Plaintiffs' telephone lines while they

made the illegal calls to Plaintiffs' cellular telephones;

4.2.6.   Plaintiffs' telephone lines were occupied by the unauthorized calls from Defendants;

4.2.7.   Defendants' seizure of Plaintiffs' telephone lines was intrusive; and

4.2.8.   Plaintiffs were inconvenienced by Defendants' calls, by among other things, having to listen to the prerecorded message

5.   **TCPA Background and prerecorded message calls to cellular telephones.**

5.1. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.   In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

5.2. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call.   *See* 47 U.S.C. § 227(b)(1)(A)(iii).

5.3. The TCPA provides a private cause of action to persons who receive calls

in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

5.4. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

5.5. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## 6. The TCPA Requires Entities to Have Sufficient Policies in Place to

**Prevent Unwanted Calls Before Making Telemarketing Calls.**

6.1. The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

6.2. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

6.3. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

6.4. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

6.5. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five

years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

6.6. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

6.7. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d). Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

7. **The National Do Not Call Registry**

7.1. The national Do Not Call Registry (the "**Registry**") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.* The TCPA and implementing regulations prohibit the initiation of telephone solicitations

to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

8. **Liability**

8.1. Individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001)("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and wilfully) violate the TCPA should not escape liability solely because they are corporate officers.").

8.2. A number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the

violative conduct. See *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Maryland v. Universal Elections*, 787 F. Supp. 2d  408, 416 (D.Md. 2011)(reasoning that "if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force"); Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC, 584 F. Supp. 2d 736, 745 (D. Md. 2008).

8.3. Under federal common-law principles of agency, there is also vicarious liability for TCPA violations. *See In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6582 (2013).

8.4. An agency relationship can be based on express authority, apparent authority, or ratification. Express authority exists when a principal authorizes an agent to perform specific tasks for the principal's benefit and is subject to its control. Alternatively, apparent authority can create agency, such as when a third-party reasonably believes an actor has authority to act as an agent and the belief is traceable to a manifestation of the principal. Ratification may give rise to an agency relationship, such as

when a principal ratifies the agent's acts by knowingly accepting their benefits.

8.5. Although allegedly separate entities, Affordable Auto, AAP and Renny are in fact all one and the same.

8.6. Affordable Auto and AAP are each controlled by Renny. AAP is also controlled by Affordable Auto.

8.7. Renny executes documents on behalf of Affordable Auto.

8.8. Renny executes documents on behalf of AAP.

8.9. On information and belief, when Affordable Auto has settled TCPA claims it has proposed language including AAP as a released party even though AAP has not been named in the lawsuit being settled.

8.10.　AAP made the calls to Plaintiffs.

8.11.　Affordable Auto and Renny directed AAP to make the telephone solicitation calls to Plaintiffs and calls to the Class Members. Affordable and Renny are liable for the call under the principle of express authority.

8.12.　Affordable Auto and Renny benefited from the vehicle service contracts issued by AAP to K. Pavelka, Doughty and J. Morton. Affordable Auto and Renny accepted the future benefits of the profits from the vehicle service contracts and thus ratified the calls made to Plaintiffs.

8.13.	Affordable Auto and Renny benefited from the vehicle service contracts issued by AAP to the Class Members. Affordable Auto and Renny accepted the benefits of the profits from the vehicle service contracts and thus ratified the calls made to the Class Members.

8.14.	AAP is the agent of both Affordable Auto and of Renny.

8.15.	AAP's website [www.useaap.com](www.useaap.com) is registered to GR Investment Group, LLC. Renny is the registered agent and Manager of GR Investment Group, LLC. The principal address of GR Investment Group, LLC is 1300 N Congress Avenue, West Palm Beach, FL 33409.

8.16.	AAP is the fictitious name of Pelican Investment Holdings Group, LLC.   Renny signed Pelican Investment Holdings Group, LLC's application for registration of the AAP fictitious name with the State of Florida.

8.17.	The principal address of Pelican Investment Holdings Group, LLC is 1300 N Congress Avenue, West Palm Beach, FL 33409.

8.18.	The sole member and the Manager of Pelican Investment Holdings Group, LLC is Falcon Endeavors Inc.

8.19.	 The principal address of Falcon Endeavors Inc. is 1300 N Congress Avenue, West Palm Beach, FL 33409. Renny is the Chief Executive Officer of Falcon Endeavors Inc.

8.20.     Affordable Auto's principal address is 1300 N Congress Avenue, West Palm Beach, FL 33409. Renny is the registered agent and Manager of Affordable Auto.

8.21.     Renny designed, approved and implemented the calling/marketing campaign that resulted in the calls to Plaintiffs and the Class Members.

8.22.     Renny participated in the illegal telemarketing by personally designing the calling/marketing campaigns, approving the calling/marketing campaigns, participating in the calling/marketing campaigns and directing the activities of the individuals that made the calls.

8.23.     Thus, at all times relevant hereto, Renny, acting in concert with AAP, has formulated, directed, controlled, had the authority to control, or otherwise participated in the acts and practices set forth in this Complaint.

## 9.  AAP's Calling Scheme and Vehicle Service Contracts/Providers

9.1.  AAP, as the fictitious name of Pelican Investment Holdings Group, LLC, would contract with vehicle service providers to actually sell the vehicle service contracts and enroll the called party.  Via, this arrangement AAP would make the telephone solicitation to the potential customer, such as Plaintiffs, and then transfer the call to the vehicle service providers to

finish the transaction.

9.2. AAP would solicit customers. If individuals were potentially interested in a vehicle service contract, AAP would forward phone calls with prospective customers to a vehicle service provider sales representative. If the resulting sales call resulted in a vehicle service contract sale, AAP would pay the vehicle service provider a percentage of the vehicle service contract sales price.

9.3. AAP utilized a mass "press-1" robo-dialing campaign (often times contacting numbers on the "Do Not Call" directory) in violation of various federal and state laws to route the live calls to the vehicle service providers.

9.4. The vehicle service providers would attempt to sell an AAP administered vehicle service contract to the person that was robo-called.

9.5. Some of the vehicle service providers learned of AAP's illegal mass dialing campaign when the vehicle service providers began receiving complaints. The vehicle service providers were forced to defend and settle multiple complaints arising out of calls made by AAP and sent to the vehicle service providers.

9.6. The scheme is set forth in Case Number 9:21-cv-81993-RS in the Southern District of Florida. Exhibit B attached hereto.

9.7. The plaintiff in that lawsuit specifically states that "[AAP] failed to disclose to Plaintiff that it would be 'routing phone calls to Plaintiff from illegal robo-dialing systems and numbers that were on the 'Do Not Call' directory.' See Compl. ¶ 42.  If Plaintiff had known Defendant was using illegal methods to try and generate business, it would not have contracted with Defendant to perform services (id. ¶ 20); this is why Defendant hid the true facts from Plaintiff."

9.8. The vehicle service providers sued Pelican Investment Holdings Group, LLC for fraud for failure to disclose the illegal "press-1" robo-dialing campaign.

9.9. AAP used the "press-1" robo-dialing with regard to each of the calls made to the Plaintiffs in this lawsuit.

9.10.    The Plaintiffs know that an artificial or prerecorded voice was used on the calls to them because a live agent was not on the call and the instructions were to "press 1." After pressing "1" a person would come on the line.

## 10. Factual Allegations regarding the Telemarketing Solicitation Calls to J. Pavelka and K. Pavelka.

10.1.    J. Pavelka is the owner of the telephone number 817-805-4742. The telephone number is a cellular number. K. Pavelka is the user of the

telephone number. She uses the telephone number for residential purposes. It is the only telephone number she regularly uses.

10.2.      The call to J. Pavelka and K. Pavelka was not placed to the telephone number for "emergency purposes."

10.3.      AAP, on behalf of itself and Affordable Auto and Renny, called the telephone number on December 27, 2021, (the "Pavelka Call") and made marketing solicitations, i.e., a call for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

10.4.      Specifically, Defendants were attempting to sell a vehicle service contract to Plaintiffs. Facts concerning the Pavelka Call are as follows:

10.4.1. The Pavelka Call was a pre-recorded voice stating that the caller had contacted the recipient of the call through the mail and this was a final notice;

10.4.2. The pre-recorded message did not provide "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4);

10.4.3. K. Pavelka pressed "1" to be connected with an agent;

10.4.4. K. Pavelka was connected with Steve Morris;

10.4.5. Steve Morris then connected K. Pavelka with Latoya Hightower, a

vehicle service contract warranty specialist.  Ms. Hightower sold K. Pavelka a vehicle service contract.  The transaction was completed on the call. Ms. Hightower gave K. Pavelka a contact number of 888-678-0697, a number appearing on AAP's website; and

10.4.6.  The vehicle service contract was issued by AAP.

10.5.      The Pavelka Call was placed without J. Pavelka's or K. Pavelka's prior express written consent and was a willful violation of the respective laws.  Defendants have been sued before for TCPA violations.

10.6.      Additionally, J. Pavelka has previously informed Renny not to call any of the telephone numbers he owned.  See Exhibit A. The telephone number to which the Pavelka Call was made is a number that was listed as a no-contact number.

10.7.      Defendants did not have a policy in place to stop the illegal calls.

10.8.      Neither J. Pavelka nor K. Pavelka is a customer of Defendants and neither has provided Defendants with his/her written consent to be called.

10.9.      The Pavelka Call was to a telephone number that J. Pavelka and K. Pavelka had listed on the National Do Not Call Registry for more than 31 days prior to the Pavelka Call.

10.10.     The Pavelka Call was made by AAP on behalf of each of AAP,

Affordable Auto and Renny in furtherance of Defendants' solicitation scheme. Thus, the call was made on behalf of all of the Defendants.

**11. Factual Allegations regarding the Telemarketing Solicitation Calls to Doughty.**

11.1. Doughty received calls from Defendants on the following dates (the "Doughty Calls"):

| Date | Time | Called From | Called To |
|---|---|---|---|
| 3/31/21 | 10:07 AM | 272-241-2630 | (610) 324-0995 |
| 4/6/21 | 4:43 PM | 878-201-0597 | (610) 324-0995 |
| 4/12/21 | 9:43 AM | 512-521-5178 | (512) 522-1472 |
| 4/19/21 | 1:45 PM | 737-757-8129 | (512) 522-1472 |
| 4/22/21 | 12:19 PM | 346-338-1278 | (512) 522-1472 |
| 5/14/21 | 1:33 PM | 724-499-6650 | (610) 428-0033 |
| 5/18/21 | 10:05 AM | 724-499-6650 | (610) 324-0995 |
| 6/3/21 | 5:22 PM | 215-248-9197 | (610) 324-0995 |
| 8/30/21 | 11:38 AM | 512-333-6803 | (512) 934-4946 |
| 11/19/21 | 11:05 AM | 714-573-9448 | (610) 324-0995 |
| 11/26/21 | 10:38 AM | 903-640-1371 | (512) 934-4946 |
| 1/5/22 | 2:21 PM | 920-743-9213 | (610) 324-0995 |
| 1/14/22 | 11:36 AM | 940-209-8127 | (512) 934-4946 |
| 1/21/22 | 10:07 AM | 315-733-4386 | (610) 324-0995 |
| 1/24/22 | 9:55 AM | 252-426-5920 | (610) 428-0033 |
| 1/25/22 | 5:16 PM | 712-546-7989 | (610) 324-0995 |
| 2/8/22 | 3:23 PM | 301-782-3628 | (610) 324-0995 |
| 2/9/22 | 5:42 PM | 972-422-9050 | (610) 324-0995 |
| 2/11/22 | 4:16 PM | 213-386-6225 | (610) 324-0995 |
| 2/11/22 | 4:55 PM | 623-393-9103 | (610) 324-0995 |
| 2/14/22 | 3:29 PM | 724-241-7475 | (610) 428-0033 |
| 2/14/22 | 4:20 PM | 724-241-7457 | (610) 428-0033 |
| 2/14/22 | 4:43 PM | 281-847-3944 | (610) 428-0033 |
| 2/14/22 | 9:05 AM | 386-252-8391 | (610) 324-0995 |
| 2/15/22 | 11:58 AM | 316-789-0045 | (610) 324-0995 |
| 2/17/22 | 11:59 AM | 562-758-3026 | (610) 324-0995 |
| 2/17/22 | 11:51 AM | 956-849-4905 | (610) 324-0995 |
| 2/18/22 | 5:05 PM | 215-684-5939 | (610) 324-0995 |
| 2/21/22 | 3:33 PM | 608-837-7992 | (610) 324-0995 |
| 2/21/22 | 2:59 PM | 352-595-4253 | (610) 324-0995 |
| 2/24/22 | 5:58 PM | 256-835-0098 | (610) 324-0995 |
| 2/25/22 | 11:50 AM | 702-395-3199 | (610) 324-0995 |
| 3/2/22 | 5:46 PM | 610-696-7446 | (610) 324-0995 |
| 3/2/22 | 12:23 PM | 870-879-3473 | (610) 324-0995 |
| 3/3/22 | 5:25 PM | 570-252-9586 | (610) 324-0995 |
| 3/10/22 | 5:22 PM | 703-838-6666 | (610) 324-0995 |
| 3/14/22 | 4:37 PM | 334-775-9091 | (610) 324-0995 |
| 3/15/22 | 4:48 PM | 205-942-6309 | (610) 324-0995 |
| 3/15/22 | 4:16 PM | 425-424-3343 | (610) 324-0995 |
| 3/15/22 | 10:04 AM | 336-946-6258 | (610) 324-0995 |
| 3/16/22 | 3:52 PM | 606-783-1040 | (610) 428-0033 |
| 3/16/22 | 2:45 PM | 904-598-0743 | (610) 324-0995 |
| 3/17/22 | 5:06 PM | 480-535-2992 | (610) 324-0995 |
| 3/22/22 | 9:13 AM | 434-277-5139 | (610) 324-0995 |
| 3/23/22 | 11:07 AM | 518-762-1546 | (610) 324-0995 |

11.2.    The Doughty Calls were made by AAP.

11.3. Doughty is not a customer of Defendants and has not provided Defendants with his written consent to be called on his telephone numbers.

11.4.     Doughty's cellular phone numbers 610-324-0995, 610-428-0033, 512-522-1472 and 512-934-4946 are cellular numbers used for residential purposes.

11.5. Defendants did not call Doughty for emergency purposes.

11.6.     The Doughty Calls were prerecorded voices.

11.7. On some of the Doughty Calls, after listening to the prerecorded voice, Doughty pressed "1," was connected with a live agent and purchased a vehicle service contract that was issued by AAP.

11.8.     The Doughty Calls were to telephone numbers that Doughty had listed on the National Do Not Call Registry for more than 31 days prior to the call.

11.9.     The Doughty Calls were placed without Doughty's prior express written consent and was a willful violation of the respective laws.

11.10.     AAP, on behalf of itself and Affordable Auto and Renny, made the Doughy Calls and made marketing solicitations, i.e., calls for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

11.11.     Specifically, Defendants were attempting to sell a vehicle service contract to Doughty.

11.12.     On May 18, 2021, Doughty informed AAP, through its counsel, Jason Weiss, not to call him.

11.13.     Weiss, speaking on behalf of AAP, told Doughty that he [Weiss] could make the calls stop by putting Doughty on the "Exchange."

11.14.     Weiss told Doughty that this would stop the auto warranty calls Doughty was receiving.

11.15.     The calls did not stop. AAP continued to call Doughty

12. **Factual Allegations regarding the Telemarketing Solicitation Calls to J. Morton.**

12.1.     J. Morton received calls from Defendants on the following dates (the "J. Morton Calls"):

| Date | Calling Number | Called Number |
|---|---|---|
| 1/15/2021 | 972-476-4604 | 972-375-4013 |
| 3/9/2021 | 972-476-4195 | 972-375-4013 |
| 3/16/2021 | 972-476-3328 | 972-375-4013 |
| 3/23/2021 | 972-476-4012 | 972-375-4013 |
| 5/14/2021 | 972-474-1881 | 972-375-4013 |
| 6/10/2021 | 972-476-4496 | 972-375-4013 |
| 8/3/2021 | 469-253-2179 | 972-375-4013 |
| 8/4/2021 | 469-685-7281 | 972-375-4013 |
| 11/16/2021 | 918-371-0430 | 972-375-4013 |
| 11/16/2021 | 512-478-1533 | 972-375-4013 |
| 12/10/2021 | 832-427-5767 | 972-375-4013 |
| 1/24/2022 | 972-630-1486 | 972-375-4013 |

12.2.     On June 10, 2021, and August 4, 2021, J. Morton pressed "1" on her phone and was connected with a live agent.  J. Morton purchased a policy from the live agent that was issued by AAP.

12.3.     Each of the J. Morton Calls was a pre-recorded message.

12.4.     The J. Morton Calls were made by AAP.

12.5.     J. Morton is not a customer of Defendants and has not provided Defendants with her written consent to be called on his telephone numbers.

12.6.     J. Morton's cellular phone number is a residential number used for residential purposes.

12.7.     Defendants did not call J. Morton for emergency purposes.

12.8.     The J. Morton Calls were prerecorded voices.

12.9.     The J. Morton Calls were to a telephone number that J. Morton had listed on the National Do Not Call Registry for more than 31 days prior to the call.

12.10.    The J. Morton Calls were placed without J. Morton's prior express written consent and was a willful violation of the respective laws.

12.11.    AAP, on behalf of itself and Affordable Auto and Renny, made the J. Morton Calls and made marketing solicitations, i.e., calls for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services.

12.12.    Specifically, Defendants were attempting to sell a vehicle service contract to J. Morton.

**13. Factual Allegations regarding the Telemarketing Solicitation Calls to D. Morton.**

13.1. D. Morton received calls from Defendants on the following dates (the D. Morton Calls"):

| Date | Calling Number | Called Number |
|------|----------------|---------------|
| 11/23/2020 | 972-476-3806 | 972-375-8011 |
| 12/31/2020 | 972-476-3540 | 972-375-8011 |
| 3/11/2021 | 972-476-4611 | 972-375-8011 |
| 3/17/2021 | 972-476-3581 | 972-375-8011 |
| 4/12/2021 | 972-476-3892 | 972-375-8011 |
| 5/21/2021 | 972-476-3246 | 972-375-8011 |

13.2.    Each of the calls was a pre-recorded message.

13.3.    Each of the D. Morton Calls was a pre-recorded message that stated:

13.4.    The D. Morton Calls were made by AAP.

13.5.    D. Morton is not a customer of Defendants and has not provided Defendants with his written consent to be called on his telephone numbers.

13.6.    D. Morton's cellular phone number is a residential number used for residential purposes.

13.7.    Defendants did not call D. Morton for emergency purposes.

13.8.    The D. Morton Calls were prerecorded voices.

13.9.    The D. Morton Calls were to a telephone number that D. Morton had listed on the National Do Not Call Registry for more than 31 days prior to the call.

13.10.    The D. Morton Calls were placed without D. Morton's prior express written consent and was a willful violation of the respective laws.

13.11.    AAP, on behalf of itself and Affordable Auto and Renny, made the D. Morton Calls and made marketing solicitations, i.e., calls for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

13.12.    Specifically, Defendants were attempting to sell a vehicle service contract to D. Morton.

## 14. Defendants' Lack of Registration

14.1.    None of the Defendants registered pursuant to § 302.101 of the Texas Business & Commercial Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants' registrations.

14.2.    The telephone numbers from which Plaintiffs were called, do not

appear in the Texas Registration Database.

14.3.      None of the Defendants qualify for an exemption under § 302.053.

14.4.      The calls were made to Plaintiffs who were located in Texas and who qualify as a "purchaser" under § 302.001 of the Texas Business & Commercial Code.

## 15. Class Action Allegations

15.1. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

15.2.      Plaintiffs and all members of the classes defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance.

15.3.      Plaintiffs bring this action on behalf of themselves and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23:

15.3.1. **TCPA Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to

Plaintiffs.

15.3.2. **TCPA Do Not Call Class**: All persons within the United States to whose telephone number Defendants placed (or had placed on their behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 31 days at the time of the calls.

15.3.3. **TCPA Policy Class**: All persons in the United States whose, (1) telephone numbers have previously been provided to Defendants in connection with a request to no longer be called (2) but received a telephone solicitations from or on behalf of Defendants in a twelve-month period (3) including at least one telephone solicitation from or on behalf of Defendants more than 31 days after requesting to no longer be called (4) from four years prior to the filing of the Complaint.

15.3.4. **The Texas 305 Class:** All persons in the state of Texas to whose telephone number Defendants (1) placed (or had placed on their behalf) a call in violation of 47 U.S.C. § 227 from four years prior to the filing of this action through the present.

15.3.5. **The Texas Registration Class:** All persons in the state of Texas from four years prior to the filing of this action through the present to whom Defendant (or an agent acting on behalf of Defendant) made a telephone solicitation.

15.4.    Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

15.5.    The Plaintiffs are a member of and will fairly and adequately

represent and protect the interests of the Classes as they have no interests that conflict with any of the Class members.

15.6.     This Class Action Complaint seeks injunctive relief and money damages.

15.7.     The Classes as defined above are identifiable through dialer records, other phone records, and phone number databases.

15.8. Plaintiffs do not know the exact number of members in the proposed classes, but reasonably believe based on the scale of Defendants' business, that the classes are so numerous that individual joinder would be impracticable. On information and belief, the potential class members number at least in the hundreds or thousands.

15.9.     Plaintiffs and all members of the proposed classes have been harmed by the acts of Defendants in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights.

15.10.    The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

15.11.    There are well defined, nearly identical, questions of law and

fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

15.12.     There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

15.12.1. whether multiple telemarketing calls were made promoting Defendants' goods or services to members of the Classes;

15.12.2.     whether the telemarketing calls at issue were made to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

15.12.3. whether Defendants made multiple calls to individuals more than 30 days after they had been provided with an instruction to no longer contact such individuals;

15.12.4.     whether Defendant's conduct constitutes a violation of the TCPA; and

15.12.5. whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

15.13.     Plaintiffs' claims are typical of the claims of class members.

15.14.     Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions, including TCPA class

actions.

15.15.    Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

15.16.    The actions of Defendants are generally applicable to the class as a whole and to Plaintiffs.

15.17.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

15.18.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

15.19.    Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**16. Count 1 -Violation of the Telephone Consumer Protection Act, U.S.C. 227(b)(On Behalf of Plaintiffs and the TCPA Robocall Class)**

16.1.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

16.2.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone number of Plaintiffs and members of the Class delivering pre-recorded messages.

16.3.     As a result of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

16.4.     If the Defendants' conduct is found to be knowing or willful, the Plaintiffs and members of the Class are entitled to an award of up to treble damages.

16.5.     Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## 17. Count 2 - Violations of the TCPA, 47 U.S.C. § 227(c) (On Behalf of Plaintiffs and the TCPA Do Not Call Class)

17.1. Plaintiffs (excluding Jackson Pavelka and Kaylee Pavelka, unless discovery shows otherwise) and the proposed TCPA Do Not Call Class incorporate the foregoing allegations as if fully set forth herein.

17.2.     Defendants placed, or had placed on their behalf, prerecorded telemarketing telephone calls to Plaintiffs' and the TCPA Do Not Call Class Members' residential telephone numbers.

17.3.     Plaintiffs and the TCPA Do Not Call Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of calls.

17.4.     Plaintiffs and the TCPA Do Not Call Class Members each received two or more such calls in a 12-month period.

17.5.     Plaintiffs and the TCPA Do Not Call Class Members are entitled

to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5).

17.6.      Plaintiffs and the TCPA Do Not Call Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## 18. Count 3 - Violations of the TCPA, 47 U.S.C. § 227(c) (On Behalf of Plaintiffs and the TCPA Policy Class)

18.1.      Plaintiffs and the proposed TCPA Policy Class incorporate the foregoing allegations as if fully set forth herein.

18.2.      Defendant placed numerous calls for telemarketing purposes to Plaintiffs and the TCPA Policy Class Members' telephone numbers.

18.3.      Defendants did so despite not having a written policy pertaining to "do not call" requests.

18.4.      Defendants did so despite not having such a policy available "upon demand."

18.5.      Defendants did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

18.6.      Defendants did so despite not recording or honoring "do not call" requests.

18.7.      Defendants did so without complying with the identification and

disclosure requirements.  47 C.F.R. § 64.1200(d)(4).

18.8.     Defendants placed two or more telemarketing telephone calls to Plaintiffs and the TCPA Policy Class Members' telephone numbers in a 12-month period.

18.9.     Plaintiffs and the TCPA Policy Class Members are entitled to an award of $500 in statutory damages for each telephone call pursuant to 47 U.S.C. § 227(c)(5).

18.10.    Plaintiff and the TCPA Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## 19. Court 4 - Violation of Tex. Bus. & Com. Code, Chapter 305 ("TBCC") (On Behalf of Plaintiffs and the Texas 305 Class)

19.1.     Plaintiffs and the Texas 305 Class Members incorporate by reference all of the above paragraphs as though fully stated herein.

19.2.     Plaintiffs are a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

19.3.     Defendants are a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

19.4.     Pursuant to Section 305-053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. §

227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both an injunction and damages.

19.5. As set forth above Defendants violated 47 U.S.C. § 227, or a regulation adopted under that provision.

19.6. Plaintiffs are entitled to a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305.

19.7. Pursuant to Section 305-053(b) of the Texas Business & Commerce Code, Plaintiffs and the Texas 305 Class Members are entitled to the greater of $500.00 for each violation or Plaintiffs' actual damages for each call negligently made by Defendants.

19.8. Pursuant to Section 305-053(c) of the Texas Business & Commerce Code, Plaintiffs and the Texas 305 Class Members are entitled to not more than the greater of $1,500.00 for each violation or three times Plaintiffs' actual damages for each violation by Defendants that the Court finds was made knowingly or intentionally.

## 20. Count 5 - Violation of § 302.101 of the Texas Business & Commerce Code (On Behalf of Plaintiffs and the Texas Registration Class)

20.1. Plaintiffs and the Texas Registration Class Members incorporate the forgoing paragraphs as though the same were set forth at length

herein.

20.2.    §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

20.3.    Defendants violated § 302.101 of the Texas Business & Commercial Code when they or their representative engaged in telephone solicitation of Plaintiffs and the Texas Registration Class Members without first obtaining a registration certificate from the Office of the Secretary of State.

20.4.    §302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees. Plaintiffs Texas Registration Class Members seek all these damages.

## 21. Prayer for Relief

21.1.    Plaintiffs, individually and on behalf of the Classes, pray for the

following relief:

21.1.1.  Injunctive relief prohibiting Defendants from making telephone calls advertising their goods or services, except for emergency purposes, utilizing pre-recorded messages or to any number on the National Do Not Call Registry in the future;

21.1.2.  As a result of Defendant's negligent, willful and/or knowing violations of 47 U.S.C. 227(b), $500 for each violation and $1,500 for each and every willful and/or knowing violation;

21.1.3.  As a result of Defendant's negligent, willful and/or knowing violations of 47 U.S.C. 227(c), $500 for each violation and $1,500 for each and every willful and/or knowing violation;

21.1.4.  As a result of Defendant's negligent, willful and/or knowing violations of 47 U.S.C. 227, damages pursuant to Section 305-053(a) of the Texas Business & Commerce Code in the amount of $500 for each violation and $1,500 for each and every willful and/or knowing violation.

21.1.5. A civil penalty of $5,000 for each violation of §302.302(a) of the Texas Business & Commerce Code and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees;

21.1.6.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiffs are a proper representative of the Classes, and appointing their lawyers and law firms representing Plaintiffs as counsel for the Classes;

21.1.7.  Injunctive relief (as provided under §302.302(d) of the Texas Business & Commerce Code);

21.1.8.  Such other relief as the Court deems just and proper.

**22. Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Respectfully submitted:

By:   */s/ Chris R. Miltenberger*

Chris R. Miltenberger
Texas State Bar Number 14171200
Designated as Lead Attorney

**The Law Office of Chris R. Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com
Attorney for Plaintiffs

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically through the Court's CM/ECF system in compliance with the Local Rules.

By: _*/s/ Chris R. Miltenberger*_
    Chris R. Miltenberger