UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACKSON PAVELKA, KAYLEE PAVELKA, THOMAS DOUGHTY, JAN MORTON, and DAVID MORTON, *individually and on behalf of all others similarly situated,* | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-0074-B |
| PELICAN INVESTMENT HOLDINGS GROUP, LLC d/b/a AAP, AFFORDABLE AUTO PROTECTIONS, LLC, and GUSTAV RENNY, | § § § § § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Affordable Auto Protection, LLC (Affordable)'s (Doc. 22); Gustav Renny (Renny)'s (Doc. 23); and Pelican Investment Holdings Group, LLC d/b/a AAP (AAP)'s (Doc. 24) (collectively Defendants) Motions to Dismiss and Motions to Strike Class Action Allegations. For the following reasons, the Court **DENIES** the Motions.

**I.**

**BACKGROUND**[1]

This putative class action[2] arises out of an alleged "press-1" robo-dialing campaign. Plaintiffs

---

[1] The Court draws the following factual account from Plaintiffs' Amended Complaint (Doc. 14).

[2] Plaintiffs have not moved to certify the class under Federal Rule of Civil Procedure 23. *See* Doc. 27, Resp. AAP, 9 ("No motion for class certification has been filed.").

brought this action for violation of the Telephone Consumer Protection Act[3] (TCPA) and Sections 305.053(c) and 302.101 of the Texas Business & Commerce Code. Doc. 14, Am. Compl., ¶ 1.1. The Plaintiffs, Jackson Pavelka (J. Pavelka), Kaylee Pavelka (K. Pavelka), Thomas Doughty (Doughty), Jan Morton (J. Morton), and David Morton (D. Morton) (collectively Plaintiffs), received pre-recorded calls to their cellular residential telephone numbers from an entity making marketing solicitations, specifically attempting to sell Plaintiffs a vehicle service contract. *Id.* ¶¶ 1.1, 10.4, 11.1, 11.6–11.7, 12.1, 12.8, 12.11, 13.1, 13.8, 13.11. AAP, on behalf of Affordable and Renny, made the calls. *Id.* ¶¶ 8.10–8.11, 10.3. AAP used a "mass 'press-1' robo-dialing campaign." *Id.* ¶ 9.3. Plaintiffs did not give consent to receive the calls. *Id.* ¶ 1.5. On each call, Plaintiffs heard a pre-recorded message. *Id.* ¶¶ 10.4.2, 11.6, 12.3, 13.2. If Plaintiffs pressed "1," they would be connected to a live agent. *Id.* ¶¶ 10.4.3, 11.7, 12.2.[4] After being connected to an agent, K. Pavelka, Doughty, and J. Morton each purchased a vehicle service contract issued by AAP. *Id.* ¶¶ 10.4.5-6, 11.7, 12.2. Plaintiffs do not allege that J. Pavelka nor D. Morton purchased a contract. *See id.* ¶¶ 10, 13. At the time they received the calls, Plaintiffs' telephone numbers were listed on the national Do Not Call Registry (Registry). *Id.* ¶¶ 2.1, 2.3–2.5. The numbers were listed on the Registry for more than thirty-one days before receiving a call, and calls were not made for emergency purposes. *Id.* ¶¶ 10.2, 10.9, 11.5, 11.8, 12.7, 12.9, 13.7, 13.9.

J. Pavelka listed 817-805-4742 on the Registry on May 23, 2019, and K. Pavelka uses this same residential telephone number. *Id.* ¶¶ 2.1–2.2. AAP called the number once on December 27,

---

[3] *See* 47 U.S.C. § 227, *et seq.*

[4] Plaintiffs do not allege that D. Morton was asked when called to press "1" to speak to a live agent. *See* Doc. 14, Am. Compl., ¶ 13.

2021. *Id.* ¶ 10.3. Doughty listed 610-428-0033 on June 28, 2006; 610-324-0995 on September 11, 2007; 512-522-1472 on February 6, 2011; and 512-934-4946 on October 6, 2011. *Id.* ¶ 2.3. AAP called each number at least three times between March 31, 2021, and March 23, 2022. *Id.* ¶¶ 11.1–11.2. In total, AAP called Doughty forty-five times. *Id.* J. Morton listed 912-375-4013 on November 17, 2004, and AAP called twelve times between January 15, 2021, and January 24, 2022. *Id.* ¶¶ 2.4, 12.1, 12.4. D. Morton listed 972-375-8011 on November 17, 2004, and AAP called six times between November 23, 2020, and May 21, 2021. *Id.* ¶¶ 2.5, 13.1, 13.4.

During a call on December 27, 2021, K. Pavelka purchased a vehicle service contract. *Id.* ¶¶ 10.3, 10.4.5. A live agent "gave K. Pavelka a contact number of 888-678-0697, which appeared on AAP's website." *Id.* ¶ 10.4.5. Doughty and J. Morton also bought vehicle service contracts from AAP. *Id.* ¶¶ 11.7, 12.2. "On May 18, 2021, Doughty informed AAP, through its counsel, Jason Weiss, to not call him." *Id.* ¶ 11.12. Weiss, "on behalf of AAP, told Doughty that he . . . could make the calls stop." *Id.* ¶ 11, 13. "AAP continued to call." *Id.* ¶ 11.15.

Plaintiffs contend that although allegedly separate, Affordable, AAP, and Renny are in fact, "one and the same." *Id.* ¶ 8.5. "AAP is a Delaware entity registered to do business in Florida." *Id.* ¶ 2.6. AAP's website is registered to GR Investment Group, LLC (GR Investment). *Id.* ¶ 8.15. Renny is the registered agent and manager of GR Investment. *Id.* AAP is the d/b/a name of Pelican Investment Holdings Group, LLC (Pelican), and Renny signed Pelican's d/b/a application for the name. *Id.* ¶ 8.16. The sole member and manager of Pelican is Falcon Endeavors Inc. (Falcon). *Id.* ¶ 8.18. Renny is the Chief Executive Officer of Falcon. *Id.* ¶ 8.19. Renny is also the registered agent and manager of Affordable. *Id.* ¶ 8.20. GR Investment, Pelican, Falcon, and Affordable share one principal address: 1300 N. Congress Avenue, West Palm Beach, FL 33409. *Id.* ¶¶ 8.15, 8.17,

8.19–8.20.

Plaintiffs further contend that Renny controls the other Defendants, Affordable and AAP, and executes documents on behalf of each entity. *Id.* ¶¶ 8.6–8.8. Affordable allegedly controls AAP as well. *Id.* ¶ 8.6. Together, Affordable and Renny "directed AAP to make the telephone solicitation calls to Plaintiffs and . . . Class Members." *Id.* ¶ 8.11. Affordable and Renny "benefited from the vehicle service contracts issued by AAP " to three of the plaintiffs and "accepted the future benefits of the profits from the vehicle service contracts." *Id.* ¶ 8.12.

Plaintiffs' complaint alleges five counts. Count 1 alleges that Defendants violated 47 U.S.C. § 227(b) "by making calls . . . to the cellular telephone number of Plaintiffs and members of the Class delivering pre-recorded messages." *Id.* ¶ 16.2. Count 2 alleges that Defendants violated 47 U.S.C. § 227(c) when they "placed, or placed on their behalf," two or more "pre-recorded telemarketing telephones calls" in a twelve-month period to Plaintiffs (" excluding Jackson Pavelka and Kaylee Pavelka, unless discovery shows otherwise") and the "TCPA Do Not Call Class Members." *Id.* ¶¶ 17.1–17.4. Count 3 alleges that Defendants violated 47 U.S.C. § 227(c) by placing "numerous calls for telemarketing purposes . . . despite not having a written policy pertaining to 'do not call' requests . . . available 'upon demand[,]' despite not recording or honoring 'do not call' requests[,] and without complying with the identification and disclosure requirements." *Id.* ¶¶ 18.2–18.7. Count 4 alleges that Defendants violated Tex. Bus. & Com. Code § 305.053(a), which allows for a private right of action against Defendants for violating 47 U.S.C. § 227 or a regulation adopted under that provision. *Id.* ¶¶ 19.1–19.5. Count 5 alleges that Defendants violated Tex. Bus. & Com. Code § 302.101 "when they or their representative engaged in telephone solicitation of Plaintiffs and Texas Registration Class Members without first obtaining a registration certification

from the Office of the Secretary of State." *Id.* ¶ 20.3.

Plaintiffs J. Pavelka and K. Pavelka filed their original complaint on January 13, 2022. Doc. 1, Compl. Plaintiffs filed an amended complaint on April 16, 2022, adding Doughty, J. Morton, and D. Morton as plaintiffs and replacing Affordable Auto Protections, LLC, with Affordable Auto Protection, LLC, as a defendant. Doc. 14, Am. Compl. Affordable, Renny, and AAP filed Motions to Dismiss on April 29, 2022. Doc. 22, Affordable Mot.; Doc. 23, Renny Mot.; Doc. 24, AAP Mot. Plaintiffs responded to Defendants on May 19, 2022. Doc. 27, Resp. AAP; Doc. 28, Resp. Renny; Doc. 29, Resp. Affordable. Defendants replied to Plaintiffs on June 2, 2022. Doc. 30, Affordable Reply; Doc. 31, Renny Reply; Doc. 32, AAP Reply. The Motions being ripe, the Court considers them below.

## II.

## LEGAL STANDARDS

A.    *Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction*

When defendants move under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff "bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). When determining whether the plaintiff establishes a prima facie case, the court must "must accept as true the [p]laintiffs uncontroverted allegations, and resolve in [its] favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219–20 (5th Cir. 2012) (alterations incorporated) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding whether the plaintiff has established personal jurisdiction, "[t]he district court may consider the

contents of the record at the time of the motion[.]" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343–44 (5th Cir. 2002) (citation omitted).

Personal jurisdiction exists when "the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* (citing *Johnston*, 523 F.3d at 609).

To satisfy due process, two elements must be met: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being brought to court there; and (2) the exercise of jurisdiction over the defendant must "comport[] with fair play and substantial justice." *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) (citations omitted).

The "minimum contacts" prong of the due process analysis can be met through contacts that give rise to either general or specific jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). In contrast, specific jurisdiction exists "only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Gundle*, 85 F.3d at 205.

"Once a plaintiff establishes minimum contacts between the defendant and the forum state,

the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Sangha*, 882 F.3d at 102 (citation omitted). In determining whether the assertion of jurisdiction is fair, the court considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiffs interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

B.      *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiffs complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

Below, the Court first addresses Affordable's and Renny's arguments for dismissal for lack of personal jurisdiction. Next, the Court addresses AAP's argument for dismissal for failure to state a claim. The Court then addresses Defendants' arguments to strike class action allegations.

A.    *Rule 12(b)(2) Personal Jurisdiction of Affordable and Renny*

Affordable[5] and Renny seek dismissal of Plaintiffs' claims against them under Rule 12(b)(2) for lack of personal jurisdiction. Doc. 22, Affordable Mot., 6; Doc. 23, Renny Mot., 5. AAP has not objected to this Court's jurisdiction over it. *See* Doc. 24, AAP Mot. Affordable and Renny also seek dismissal under Rule 12(b)(6) for failure to state a claim. Doc. 22, Affordable Mot., 11; Doc. 23, Renny Mot., 11. Because personal jurisdiction is dispositive of the motions and must be decided before addressing the substance of the claims, the Court only addresses Affordable's and Renny's personal jurisdiction arguments. *See Pervasive Software*, 688 F.3d at 231 ("Personal jurisdiction, [like

---

[5] Affordable also argued for dismissal under Rule 12(b)(5) as an incorrectly named party because Plaintiffs' "Complaint remains devoid of any claim directly against Affordable," adding that "Plaintiffs have failed to include any facts that would support any plausible liability against Affordable." Doc. 22, Affordable Mot., 5. "A 12(b)(5) motion to dismiss poses a challenge to the manner or method of service attempted by the plaintiff rather than the form or content of the summons." *Raburn v. Dae Woo, Inc.*, 2010 WL 743933, at *1 (N.D. Tex. Mar. 3, 2010) (quoting *Tinsley v. Comm'r of Internal Revenue Serv.*, 1998 WL 59481, at *3 (N.D. Tex. Feb. 9, 1998)). Therefore, Affordable's argument pertaining to the content of Plaintiffs' claims, specifically whether direct liability has been plausibly claimed, is best addressed as an argument for dismissal under Rule 12(6)(2) for lack of personal jurisdiction and will be addressed as such.

subject matter jurisdiction], is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" (quoting *Ruhrgas*, 526 U.S. at 584)).

Personal jurisdiction can be either general or specific. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 312 n.2 (5th Cir. 2007). General jurisdiction requires a defendant to be "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Specific jurisdiction requires a defendant to have certain "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### 1.    Specific Personal Jurisdiction

Plaintiffs do not assert that Affordable's nor Renny's contacts with Texas are so continuous and systematic to render them at home in the state.[6] *See Daimler*, 571 U.S. at 119. Plaintiffs assert only that "Defendants have sufficient contacts in this State and District to subject them to personal jurisdiction." Doc. 14, Am. Compl., ¶ 3.2. Therefore, the Court only addresses whether this Court has specific personal jurisdiction over Affordable and Renny.

For specific jurisdiction, a "nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks omitted). The "minimum contacts" inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 284 (internal quotation marks omitted). The Fifth Circuit applies a three-step analysis focusing on:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether
> it purposely directed its activities toward the forum state or purposefully availed itself

---

[6] Affordable's principal place of business is in Florida. Doc. 22, Affordable Mot., 3. Renny is a resident of Florida. Doc. 23, Renny Mot., 4.

of the privileges of conducting activities there; (2) whether the plaintiffs cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

When a nonresident moves to dismiss for lack of personal jurisdiction, "plaintiff[s] bear[] the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court chooses to decide the matter "without an evidentiary hearing, the plaintiff may satisfy its burden by presenting a *prima facie* case for jurisdiction." *Gardemal*, 186 F.3d at 592; *see Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996).

In TCPA cases, some district courts have established specific jurisdiction over an out-of-state defendant when the defendant purposefully avails itself of the benefits of the forum state by making phone calls or sending texts to phone numbers with forum area codes.[7] *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017). Plaintiffs allege that AAP made telephone calls to them. Doc. 14, Am. Compl., ¶ 1.3. Plaintiffs provide no evidence that telephone calls came directly from Affordable or Renny. The court will take the allegations of a complaint as true, except where they

---

[7] "MinuteClinic's act of placing a call to a phone number with an Illinois-affiliated area code—knowing that number was associated with a past customer of an area clinic—and leaving a message that solicits the customer to visit an area clinic constitutes purposeful direction warranting the Court's exercise of jurisdiction." *See also Luna v. Shac, LLC*, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (holding that Shac is reasonably subject to the personal jurisdiction of this court when "Shac intentionally sent unsolicited text messages advertising Sapphire to California cell phone numbers, giving rise to this litigation and purposefully directing its activity to California").

are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiffs. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. If Plaintiffs purport to suggest that they were directly contacted by Affordable or Renny, these allegations are contradicted by sworn affidavits. "I did not make any telephone calls to Plaintiffs' respective cellular telephone numbers," "have any role in making the Subject Call," "direct anyone to make the Subject Call," or "have knowledge that the Subject Call was allegedly being made." Doc. 22-l, Affordable Decl., ¶ 22; Doc. 23-1, Renny Decl., ¶ 14. Therefore, this Court need not accept the allegations as true for purposes of determining whether Plaintiffs have made a prima facie case. Plaintiffs have not met the burden of establishing specific personal jurisdiction over Affordable nor Renny as a result of either's direct contacts with Texas.

### 2. Agency Liability

In general, courts "must assess each defendant's contacts with the forum state individually—a substantial connection is not formed by the "unilateral activity of another party or a third person." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 543 (5th Cir. 2019) (quoting *Burger King*, 471 U.S. at 475 (1985)). However, the Federal Communications Commission stated that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

To prove agency by express authority under Texas law, the principal must have both the right "(1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008) (quoting *Happy Indus. Corp. v. Am. Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex.

App.—Corpus Christi 1998, pet. dism'd w.o.j.)).

Under a theory of ratification, a principal may be liable if, though it originally had no knowledge of the agent's unauthorized acts, it retains the benefits of the transaction after acquiring full knowledge. *Penton v. Am. Bankers Ins. Co. of Fla.*, 114 F. App'x 622, 625 (5th Cir. 2004) (quoting *Land Title Co. of Dall., Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980)). The critical factors of ratification are "the principal's knowledge of the transaction" and the principal's "actions in light of such knowledge." *See Land Title*, 609 S.W.2d at 756.

Plaintiffs allege personal jurisdiction is established by an agency relationship between (1) Renny as principal and Affordable and AAP as his agents and (2) Affordable as principal and AAP as its agent. Doc. 14, Am. Compl., ¶¶ 8.11–8.12. Plaintiffs allege that Affordable and Renny are liable for the calls made to Plaintiffs under a theory of express authority or, in the alternative, a theory of ratification. *Id.*

This case is analogous to *Callier*, another case alleging violations of the TCPA. *Callier v. SunPath Ltd.*, 2020 WL 10285659 (W.D. Tex. Aug. 10, 2020). Like the plaintiffs in *Callier*, Plaintiffs assert that jurisdiction is established by an agency relationship. *Id.* at *3. Also like the plaintiffs in *Callier*, Plaintiffs have not "made out a *prima facie* case that such an agency relationship exists to establish personal jurisdiction." *Id.* Plaintiffs allege that Renny controls Affordable and AAP, and Affordable and Renny directed AAP to make the telephone calls to Plaintiffs. *Id.* ¶¶ 8.6, 8.11. Renny was the manager of Affordable, and Affordable concedes as such. *Id.* ¶ 8.20; Doc. 22, Affordable Mot., 3. Plaintiffs proffer that Renny acted in concert with AAP because he is the manager of the LLC that AAP's website is registered to, and he is the CEO of Falcon, the sole member of another LLC that owns AAP. Doc. 14, Am. Compl., ¶¶ 8.15, 8.18–8.19, 8.23. Renny signed the d/b/a

application for the AAP name, and all of these entities share one principal address with Affordable. *Id.* ¶¶ 8.15–8.17, 8.19–8.20. Thus, Plaintiffs conclude that the Defendants are "one and the same." *Id.* ¶ 8.5. Nevertheless, Affordable's and Renny's affidavits state that neither had "any role in making the Subject call," nor directed "anyone to make the Subject Call," nor had "knowledge that the Subject Call was allegedly being made." Doc. 22-1, Affordable Decl., ¶ 22; Doc. 23-1, Renny Decl., ¶ 14. Affordable also states that it "is not registered to do business as AAP, . . . has never been registered to do business as AAP, and . . . has never transacted business as AAP." Doc. 22-1, Affordable Decl., ¶ 13. Though Plaintiffs attempt to show that Defendants are intertwined, they do not counter Defendants' affidavits to create a genuine, material conflict needed to resolve this dispute in their favor.

Like the court in *Callier*, this Court "cannot reasonably infer an agency relationship from the mere fact that telemarketing calls mere made on behalf of" Renny and Affordable. *Callier*, 2020 WL 10285659, at *3. Renny and Affordable must have had the authority to assign AAP's tasks and control the means and details of process by which AAP conducted its telemarketing business. Without this control, the calls are merely unilateral activities of a third party, which do not provide the basis for personal jurisdiction. *See Halliburton*, 921 F.3d at 543.

Plaintiffs have not pleaded facts establishing that Renny and Affordable were aware of AAP's actions allegedly in violation of the TCPA. Full knowledge of an unauthorized transaction is necessary to establish an agency relationship by ratification. *See Land Title*, 609 S.W.2d at 756. In summary, Plaintiffs have not met the pleading burden to establish personal jurisdiction over Renny or Affordable on the basis of agency.

B.      *Jurisdictional Discovery*

The court has discretion to permit a party to conduct jurisdictional discovery to resolve issues of fact raised by a motion to dismiss for lack of personal jurisdiction. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). To support a request for jurisdictional discovery, plaintiffs must first make "a preliminary showing of jurisdiction." *Getagadget, L.L.C. v. Jet Creations Inc.*, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022). A preliminary showing requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.*; *Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 749 (5th Cir. 2020) (internal quotation marks and citation omitted). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt*, 686 F.2d at 284.

General personal jurisdiction does not exist over Affordable or Renny nor can it be established, but the Court is sensitive to Plaintiffs' limited ability to discern the possible connection and hierarchy between Defendants. While Plaintiffs do not meet the pleading burden to establish personal jurisdiction, the allegations from the pleadings do "suggest with reasonable particularity the possible existence of the requisite contacts." *Getagadget*, 2022 WL 964204, at * 5. The existence of contracts between AAP, Affordable, and Renny would resolve the question of fact as to their relationship. As such, limited jurisdictional discovery for the purpose of investigating whether this Court has specific jurisdiction will be permitted.

The Court, having considered Affordable's and Renny's arguments to dismiss for lack of personal jurisdiction, **DENIES** them. Because the Court is permitting jurisdictional discovery, the Court does not address Affordable's and Renny's arguments to dismiss for failure to state a claim.

C.      *AAP's Rule 12(b)(6) Motion*

The TCPA makes it unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 728 (S.D. Tex. 2012).

To meet its pleading burden under the TCPA, Plaintiffs are "expected to plead sufficient facts relating to the calls" they claim "to have received on" their "own phone to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Cunningham v. Florio*, 2018 WL 4473792, at *13 (E.D. Tex. Aug. 6, 2018), *adopted by* 2018 WL 4473096 (E.D. Tex. Sept. 18, 2018). Their pleadings must "present sufficient factual context to notify [the defendant] of the conduct charged." *Crawford v. Target Corp.*, 2014 WL 5847490, at *4 (N.D. Tex. Nov. 10, 2014). "Facts relevant to this determination include the amount of calls received, the approximate date and time they were received, the phone number placing the calls, and the contents of the calls." *Cunningham v. Britereal Mgmt., Inc.*, 2020 WL 7391693, at *5 (E.D. Tex. Nov. 20, 2020), *adopted by* 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020) (citations omitted).

Per the TCPA Registry provision, telemarketing solicitors are also prohibited from contacting any residential telephone subscriber who registers their telephone number on the national do-not-call registry. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). "Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *See* 47 C.F.R. § 64.1200(c)(2).

Plaintiffs allege violations of 47 U.S.C. § 227(b)–(c) of the TCPA. Doc. 14, Am. Compl.,

¶¶ 16.2, 17.1–17.4, 18.2–18.7, 19.1–19.5. In its motion, AAP argues that Plaintiffs' claims must be dismissed because Plaintiffs fail to identify who called them or "provide any factual basis that AAP had any control over the unidentified callers." Doc. 24, AAP Mot., 5. AAP contends that Plaintiffs allege a "vehicle service contract was issued by AAP based on an alleged contact number appea[r]ing on AAP's website," a website Plaintiffs provided "no information" on. *Id.* Finally, AAP contends that three of the five plaintiffs only received information about the purported callers after purchasing a vehicle service contract. *Id.*

Plaintiffs have offered sufficient factual allegations in support of their claim against AAP as the alleged caller. *See Cunningham*, 2018 WL4473792, at *5. Plaintiffs state the number of calls they received. Doc. 14, Am. Compl., ¶¶ 10.3, 11.1–11.2, 12.1, 12.4, 13.1, 13.4. Plaintiffs state each date and time[8] that they received a call as well as the phone number placing each call. *Id.* ¶¶ 10.3, 11.1, 12.1, 13.1. The calls started with a pre-recorded message, and then after pressing "1," Plaintiffs were connected to a live agent. *Id.* ¶¶ 10.4.2–10.4.3, 11.6–11.7, 12.2–12.3, 13.2.[9] As a result of the calls, three of the plaintiffs were issued a vehicle service contract by AAP. *Id.* ¶¶ 10.4.6, 11.7, 12.12. Plaintiffs have raised a reasonable inference that discovery will reveal evidence that the calls came from AAP. *See Twombly*, 550 U.S. at 545.

The Court next turns to AAP's argument that Plaintiffs have not stated a claim upon which relief can be granted under the TCPA Registry provision because Plaintiffs fail to establish (1) when they allegedly enrolled on the Registry; (2) how long they have allegedly been enrolled on the

---

[8] K. Pavelka does not state the time she received a call on December 27, 2021.

[9] D. Morton was not asked when called to press "1" to speak to a live agent. *See* Doc. 14, Am. Compl., ¶ 13.

Registry; and (3) whether they were on the Registry at the time of the Subject Calls. Doc. 24, AAP

Mot., 5.

The Court finds that Doughty, J. Morton, and D. Morton have alleged sufficient facts to state

a claim under the TCPA Registry provision. Plaintiffs state when they enrolled on the Registry.

Doc. 14, Am. Compl., ¶¶ 2.1–2.5. Registration is honored indefinitely, and Plaintiffs do not state

that they canceled their registration or that they were removed by the Registry administrator. *See*

47 C.F.R. § 64.1200(c)(2). Plaintiffs state the dates that they were called and that each number had

been listed on the Registry for more than thirty-one days before receiving a call. Doc. 14, Am.

Compl., ¶¶ 10.3, 10.9, 11.1, 11.8, 12.1, 12.9, 13.1, 13.9. Further, each number under the § 227(c)

claim was called more than once in a twelve-month period. *Id.* ¶¶ 10.3, 11.1, 12.1, 13.1. Plaintiffs

have plausibly claimed that they were contacted in violation of the TCPA Registry provision. *See*

47 U.S.C. § 227(b)–(c); 47 C.F.R. § 64.1200(c)(2). For these reasons, the Court **DENIES** AAP's

motion to dismiss under Rule 12(b)(6).

D.     *Rule 12(f) Motions to Strike Class Action Allegations*

Here, the issue of class certification is before the Court not on a motion to certify the class

under Rule 23, but, rather, on Motions to Strike Class Action Allegations under Rule 12(f). Plaintiffs

have yet to file a motion seeking class certification. Doc. 27, Resp. AAP, 9. "The court may strike

from a pleading . . . any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ.

P. 12(f). "It is elementary that in order to maintain a class action, the class sought to be represented

must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th

Cir. 1970). "Where it is facially apparent from the pleadings that there is no ascertainable class, a

district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. Co.*,

501 F.3d 443, 445 (5th Cir. 2007). Finally, Federal Rule of Civil Procedure 23 allows courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

Plaintiffs bring a class action "on behalf of themselves and the following classes" who "have been harmed by the acts of Defendants because their privacy has been violated[,] and they were subjected to annoying and harassing calls that constitute a nuisance." Doc. 14, Am. Compl., ¶¶ 15.2–15.3. The five separate subclasses are:

> **TCPA Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiffs.

> **TCPA Do Not Call Class:** All persons within the United States to whose telephone number Defendants placed (or had placed on their behalf) two or more telemarketing calls in a twelve-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 31 days at the time of the calls.

> **TCPA Policy Class:** All persons in the United States whose, (1) telephone numbers have previously been provided to Defendants in connection with a request to no longer be called (2) but received a telephone solicitations from or on behalf of Defendants in a twelve-month period (3) including at least one telephone solicitation from or on behalf of Defendants more than 31 days after requesting to no longer be called (4) from four years prior to the filing of the Complaint.

> **The Texas 305 Class:** All persons in the state of Texas to whose telephone number Defendants (1) placed (or had placed on their behalf) a call in violation of 47 U.S.C. § 227 from four years prior to the filing of this action through the present.

> **The Texas Registration Class:** All persons in the state of Texas from four years prior to the filing of this action through the present to whom Defendant (or an agent acting on behalf of Defendant) made a telephone solicitation.

*Id.* ¶¶ 15.3.1–15.3.5. "Excluded from the Classes are counsel, the Defendants, and any entities in

which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family." *Id.* ¶ 15.5.

Defendants first argue for dismissal of the plaintiff classes because "Plaintiffs seek injunctive relief secondary to statutory monetary damages." Doc. 22, Affordable Mot., 14–18; Doc. 23, Renny Mot., 15–20; Doc. 24, AAP Mot., 6–10. Next, Defendants argue that "Plaintiffs' proposed class definitions should be stricken because they are facially overbroad, and the proposed classes are uncertifiable." *Id.* "Specifically, Plaintiffs failed to exclude persons that: (1) consented to be called (*i.e.*, provided 'prior express invitation or permission'), (2) have an 'established business relationship' . . . , or (3) did not use their phone for 'residential purposes.'" Doc. 22, Affordable Mot., 16; Doc. 23, Renny Mot., 18; Doc. 24, AAP Mot., 9. Finally, Defendants argue that "Plaintiffs have not shown that the proposed class is adequately represented because they have provided no sworn evidence that Plaintiffs will fairly and adequately protect the interests of the Classes." Doc. 22, Affordable Mot., 17; Doc. 23, Renny Mot., 19; Doc. 24, AAP Mot., 10.

To Defendants' first argument, Plaintiffs respond that "[i]njunctive relief in TCPA class action cases is only improper when plaintiffs seek individual actual damages[,] and the injunctive relief would be different for each member of the class." Doc. 27, Resp. AAP, 17; Doc. 28, Resp. Renny, 19.[10] To Defendants' second argument, Plaintiffs assert that "defining the classes" in the manner described by Defendants "would make the classes 'fail-safe' and impermissible.'" Doc. 27,

---

[10] Plaintiffs do not respond to Affordable's argument about injunctive relief. *See* Doc. 29, Resp. Affordable, 7–19. If Plaintiffs failed to respond to arguments raised in a motion to dismiss, that failure would constitute waiver or abandonment of that issue. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). This is a motion to strike, and Plaintiffs' failure to respond to Affordable's argument about injunctive relief is not dispositive at this procedural posture.

Resp. AAP, 12; Doc. 28, Resp. Renny, 14; Doc. 29, Resp. Affordable, 12. To Defendants' third argument, Plaintiffs respond that "Local Rule 23.2 requires that the named plaintiffs' ability to adequately represent the class be explained in the motion for class certification," not "in the initial complaint." Doc. 27, Resp. AAP, 17; Doc. 28, Resp. Renny, 19; Doc. 29, Resp. Affordable, 18.

Defendants' first argument fails because Defendants have misinterpreted Fed. R. Civ. P. 23(b)(2). As correctly stated in the case cited by Defendants, "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* Plaintiffs ask for a single injunction, "prohibiting Defendants from making telephone calls advertising their goods or services . . . utilizing pre-recorded messages or to any number on the . . . Registry." Doc. 14, Am. Compl., ¶ 21.1.1. Plaintiffs then ask for single monetary damages as to all class members, not "an individualized award of monetary damages." *Id.* ¶¶ 21.1.2–21.1.5; *see Dukes*, 564 U.S. at 360. The relief sought is not improper.

At the motion-to-dismiss stage, Defendants' second argument fails. Contrary to Plaintiffs' argument, the Fifth Circuit has rejected the argument that a so-called "fail-safe class" may not be certified. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999); *In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012). Plaintiffs' TCPA classes are also inconsistent with a recent decision in this district, though pertaining to a settlement class, which outlined exclusions to the class. Final Settlement Approval Order and Judgment, *Buchanan v. Sirius XM Radio Inc.*, No. 3:1 7-

CV-0728-D, (N.D. Tex. January 28, 2020), Doc. 129. "Excluded from the class definition " in Buchanan are "natural persons who were or had been paid subscribers to Sirius XM's service at the time of the first call." *Id.* at 2. The plaintiff in *Buchanan* explains in his motion to certify that in order to "exclude those with whom Sirius had a prior established business relationship, the parties have excluded all numbers belonging to Sirius's paid subscribers." Motion to Certify Class, *Buchanan v. Sirius XM Radio Inc.*, No. 3:l 7-CV-0728-D, (N.D. Tex. May 29, 2018), Doc. 60. "The exclusion of subscribing customers also addresses 'prior express written consent' because Sirius has not presented any information on customers' express written consent different from what it obtains from its subscription enrollment process." *Id.*

Unlike in *Buchanan*, Plaintiffs' TCPA Robocall Class and The Texas Registration Class do not include an exception for persons that have given prior express consent to be contacted. *See* Doc. 14, Am. Compl., ¶¶ 15.3.1, 15.3.5; 47 U.S.C. § 227(a)(4); Tex. Bus. & Com. Code § 305.053. Plaintiffs' TCPA Do Not Call Class does not include an exception for Registry members that have given prior express invitation or permission to be contacted. *See* Doc. 14, Am. Compl., ¶¶ 15.3.2, 15.3.5; 47 C.F.R. § 64.1200(c)(2)(ii). That being said, "[P]laintiffs ha[ve] yet to file a motion seeking class certification, and Defendants' arguments are more appropriately addressed at that time. *See* Order on Motion to Strike, *Clewett v. TXU Energy Retail Co.*, No. 3:21-CV-0692-S (N.D. Tex. Jan. 26, 2022), Doc. 58; Doc. 27, Resp. AAP, 9.

Defendants' third argument fails because Plaintiffs are not required to "have provided . . . evidence that they are adequately represented" at the motion-to-dismiss stage. Doc. 22, Affordable Mot., 17; Doc. 23, Renny Mot., 19; Doc. 24, AAP Mot., 10. At the motion-to-dismiss stage, taking the allegations as true, Plaintiffs have pleaded that they are "a member of and will fairly

and adequately represent and protect the interests of the Classes as they have no interests that conflict with any of the Class members." Doc. 14, Am. Compl., ¶ 15.5. Local Rule 23.2 does not pertain to pleading requirements but, rather, requires that "a brief must accompany the motion for certification" which sets out "the basis of the named plaintiffs claim to be an adequate representative of the class." Again, Plaintiffs are not seeking class certification at this time.

For the above reasons, the Court **DENIES** the arguments to strike the class action allegations, without prejudice to Defendants' ability to again raise the arguments in a motion to strike or motion to dismiss if and when Plaintiffs seek class certification.

E.     *Leave to Amend*

Under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave." The court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether leave to amend should be granted, the court can consider factors such as: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party and (5) futility of amendment. *Ashe v, Corley*, 992 F.2d 540, 542 (5th Cir. 1993) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Amendment in this case will not cause undue delay or undue prejudice given the early phase of proceedings. Amendment following jurisdictional discovery would be a good faith attempt to strengthen Plaintiffs' pleadings in light of new information. Plaintiffs previously amended their complaint to add the correct defendant, meaning there has not been repeated failure to cure deficiencies to overcome the liberal policy in favor of amendment. Plaintiffs will be permitted to amend their complaint to incorporate the limited jurisdictional discovery ordered by the Court and to exclude potential class members.

IV.

CONCLUSION

For the reasons discussed above, the Court **DENIES** Affordable's (Doc. 22), Renny's (Doc. 23), and AAP's (Doc. 24) Motions to Dismiss and Motions to Strike Class Action Allegations.

1.     It is **HEREBY ORDERED** that Renny and Affordable **RESPOND** to Interrogatories in Doc. 28-1, Jurisdictional Disc., and Doc. 29-1, Jurisdictional Disc.

2.     It is **FURTHER ORDERED** that Renny **PRODUCE** the documents requested in Doc. 28-1, Jurisdictional Disc., and Doc. 29-1, Jurisdictional Disc.

3.     It is **FURTHER ORDERED** that Renny **RESPOND** to Request For Admissions in Doc. 28-1, Jurisdictional Disc., and Doc. 29-1, Jurisdictional Disc.

4.     It is **FURTHER ORDERED** that Affordable, Renny, and AAP shall jointly file a discovery status report by **Monday, September 19, 2022**.

5.     It is **FURTHER ORDERED** that Plaintiffs shall file an amended complaint, should they elect to do so, by **Friday, November 4, 2022**.

SO ORDERED.

SIGNED: August 8, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE